UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard Laksonen,<br><br>Petitioner,<br><br>v.<br><br>B. Eischen, Warden – FPC Duluth,<br><br>Respondent. | Case No. 22-cv-2868 (KMM/JFD)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Richard Laksonen's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) and Motion for Consideration (Dkt. No. 2). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the undersigned recommends that Mr. Laksonen's petition and motion be denied.

## BACKGROUND

Mr. Laksonen is confined at the Federal Prison Camp in Duluth, Minnesota (FPC-Duluth). (Pet. at 1, Dkt. No. 1.)[1] He is serving a 21-month sentence of imprisonment for a conviction of making a false statement involving a health care benefit program, in violation of 18 U.S.C. § 1035(a)(2). (Pet. at 1; Pet'r's Mot. Consideration at 1, Dkt. No. 2; Finckler Decl. ¶ 3, Dkt. No. 15; Finckler Decl. Ex. A at 2, Dkt. No. 15-1.) According to the most

---

[1] The Court uses the page numbers provided by the ECF system when citing to court filings.

recent filing on the docket, Mr. Laksonen's projected release date is May 20, 2023. (Resp't's Letter at 4, Mar. 31, 2023, Dkt. No. 22.)

Mr. Laksonen filed his habeas petition on November 9, 2022. He contends that the Bureau of Prisons (BOP) is incorrectly calculating his First Step Act (FSA) time credits.[2] (Pet. at 2.) He asserts that the FSA provides that inmates with low or minimum risk scores, such as him, earn 15 days of FSA time credits per 30-day period, and that they do over the entire term of their incarceration. (*Id.* at 6.)

Mr. Laksonen has been incarcerated at FPC-Duluth since April 6, 2022. (Pet. at 6) His initial program review occurred on April 27, 2022, and his Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score was "low."[3] (Pet. Ex. 1 at 1, Dkt. No. 1-1.) Mr. Laksonen's next risk and needs assessment was on October 7, 2022, and he was deemed a "low" risk for recidivism. (Pet. Ex. 5 at 11, Dkt. No. 1-1.) Another risk and needs assessment took place on January 4, 2023, and Mr. Laksonen was again deemed a "low" risk for recidivism.[4] (Finckler Decl. Ex. B at 2, Dkt. No. 15-2.)

---

[2] Mr. Laksonen raised other arguments in his petition, which—according to his reply memorandum—have become moot since the petition was filed. (Pet'r's Reply at 1–2, Dkt. No. 18.) Those issues were whether the FSA time credits were being applied to home confinement rather than as a direct sentence reduction, whether an administrative remedy filing was untimely, whether the BOP was wrongly waiting to apply time credits until an inmate was within 18 months of the statutory release date, and whether the BOP should have calculated time credits on a monthly basis. (Pet. at 3, Pet'r's Mot. Consideration at 4.) Because Mr. Laksonen has acknowledged that these issues are moot, the Court does not address them.

[3] Respondent misidentifies the initial program review date as April 23, 2022. (Resp't's Mem. at 21.)

[4] Respondent omits the October risk and needs assessment from its description of the facts

Mr. Laksonen has participated in Evidence-Based Recidivism Reduction (EBRR) programming and Productive Activities (PA) since the beginning of his incarceration at FPC-Duluth. (Pet'r's Mot. Consideration at 1; Finckler Decl. ¶ 5; Finckler Decl. Ex. C, Dkt. No. 15-3.) An FSA Time Credit Assessment dated October 7, 2022 (shortly before Mr. Laksonen filed his petition on November 9, 2022) reflects 60 FSA time credits, which represents 10 days of time credits for six 30-day periods of participation in EBRR or PA. (Pet. Ex. 5 at 11, Dkt. 1-1.) Mr. Laksonen contends that he should have earned 105 days as of November 9, however, which would represent 15 days of FSA time credits for every 30 days of participation in EBRR or PA, dating back to April 9, 2022. (*Id.*; Pet'r's Mot. Consideration at 1.)

A sentence monitoring computation data report dated February 13, 2023, shows how the FSA time credits have accrued up to and including that date. (Pet'r's Reply Ex. A at 2, Dkt. No. 19-1.) Between April 6, 2022 and October 3, 2022, Mr. Laksonen accrued 60 FSA time credits, representing six 30-day periods at a time credit factor of 10. (Pet'r's Reply Ex. B at 5.) Between October 3, 2022 and February 11, 2023, he accrued 60 additional time

---

of this case, does not assign a chronological order to Mr. Laksonen's initial needs and risk assessment, and consequently characterizes the January 4, 2023 risk and needs assessment as the first such assessment. (Resp't's Mem. at 21.) Respondent submits that Mr. Laksonen has not yet had a second risk and needs assessment. (*Id.*) In fact, he has not only had a second (on October 7, 2022), he has had a third (on January 4, 2023). Even if one ignores the initial needs and risk assessment on April 27, 2022, Mr. Laksonen has now had two assessments. It appears that the BOP switched Mr. Laksonen from 10 days of FSA time credits per 30 days of programming, to 15 days of FSA time credits per 30 days of programming within days of the October risk and needs assessment.

credits, representing four 30-day periods at a time credit factor of 15. (*Id.*) Thus, as of February 11, 2023, Mr. Laksonen had accrued 120 days of FSA time credits.

Mr. Laksonen believes, however, that he should have earned 15 days of FSA time credits for every 30-day period of incarceration dating back to his arrival at FPC-Duluth on April 6, 2022, on the ground that his initial "low" PATTERN score qualified him on that date to earn 15 days of FSA time credits per 30-day period. (Pet'r's Reply at 2–3.) Alternatively, he contends that his second risk and needs assessment qualified him to earn 15 days of FSA time credits for every 30 days of participation, backdated to April 6, 2022. (*Id.* at 4.)

## ANALYSIS

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction, *Matheny v. Morrison*, 307 F. 3d 709, 711 (8th Cir. 2002), including the computation of the sentence, *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (petitions seeking "immediate release or a speedier release from . . . confinement" are "the heart of habeas corpus"). Mr. Laksonen's claim concerns the computation of his sentence, and therefore it may be brought under § 2241.

Under the FSA, a prisoner earns FSA time credits at a rate of "10 days of time credits for every 30 days of successful participation" in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A)(i). In addition, a prisoner "determined by the Bureau of Prisons to be at a

4

minimum or low risk for recidivating, who, *over 2 consecutive assessments*, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful" participation in EBRRs or PAs. *Id.* § 3632(d)(4)(A)(ii) (emphasis added). A prisoner who participates in EBRR or PA "shall receive periodic risk reassessments not less often than annually." *Id.* § 3632(d)(5). Thus, under the language of the statute, to earn a total of 15 days of FSA time credits for 30 days of programming, an inmate must have his PATTERN score calculated as a low or minimum at two consecutive risk and needs assessments. But there is no statutory provision by which an inmate can earn 15 days of FSA time credits per 30 days of programming before the two consecutive reassessments occur, nor is there a provision awarding FSA time credits for periods of incarceration dating back to the inmate's arrival at the facility.

A Memorandum for Regional Correctional Program Administrators dated August 30, 2022, provides similar guidance: "Inmates will have either an initial PATTERN level of minimum or low risk or have dropped to a minimum or low risk level and maintained the new level for two consecutive assessment periods prior to being eligible for the higher earning rate of 15 days or being able to apply the FTCs earned." (Pet'r's Reply Ex. E at 19.) Mr. Laksonen interprets this sentence to mean that an inmate is eligible to accrue 15 days of FSA time credits per 30-day period either (1) if the inmate had an initial PATTERN level of minimum or low risk (as Mr. Laksonen did) *or* (2) if the inmate dropped to a minimum or low risk level and maintained the new level for two consecutive assessment periods.

5

The Court agrees that the lack of punctuation in the sentence of the Memorandum could lead to that interpretation. However, that interpretation would not be consistent with the language of the statute: "A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, *over 2 consecutive assessments*, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added). This language contemplates that a prisoner is first determined to be at minimum or low risk for recidivating. The use of the word "over" to modify the phrase "2 consecutive assessments" indicates a duration of time spanning two successive assessments. Mr. Laksonen's position that an inmate is eligible to earn 15 days of FSA time credits per 30-day period *immediately* upon receiving the *initial* low-risk determination is inconsistent with the statutory language "*over 2 consecutive assessments*." *See* 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added).

Accordingly, consistent with the language of § 3632(d)(4)(A)(ii), the Court interprets the Memorandum's sentence to mean that, to be "eligible for the higher earning rate of 15 days," an inmate either (1) had an initial PATTERN level of minimum or low risk (as Mr. Laksonen did) or (2) dropped to a minimum or low risk level at some point, *and*—under either (1) or (2)—maintained the minimum or low level for two consecutive assessments.

The BOP's practice is consistent with the statute and the Memorandum. The BOP has determined that inmates will receive their initial PATTERN score within 28 days of arriving at the facility of confinement. (Finckler Decl. Ex. E at 8.) Reassessments are

conducted at an inmate's "regularly scheduled Program Review." (*Id.* at 9.) Program reviews occur at least once every 180 days, but when an inmate is within 12 months of his projected release date, program reviews occur every 90 days. BOP Program Statement 5322.13 at 5. For an inmate to earn 15 days of FSA time credits after 30 days of programming, the inmate must receive a low or minimum PATTERN score and maintain that score for two consecutive assessments:

> (2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:
>
>> (i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and
>>
>> (ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

28 C.F.R. § 523.42(c)(2).

In Mr. Laksonen's case, the initial determination of Mr. Laksonen's low risk of recidivism was made on April 27, 2022. (Finckler Decl. Ex. C.) The next risk and needs assessment occurred on October 7, 2022, and he was deemed a "low" risk for recidivism. (Pet. Ex. 5 at 11.) Mr. Laksonen has been earning FSA time credits at a time credit factor of 15 days per 30-day period since October 3, 2022, which was a few days before the October 7 assessment. His arguments that he should have earned 15 days of FSA time credits for every 30-day period of incarceration dating back to his arrival at FPC-Duluth on April 6, 2022, are not supported by 18 U.S.C. § 3632(d)(4) or 28 C.F.R. § 523.42(c)(2). Therefore, the Court recommends that the remaining claim in the habeas petition be denied.

In addition to the petition, Mr. Laksonen filed a letter on March 20, 2023, asserting that the BOP is applying his FSA time credits too late into the month following the month in which they were earned. (Pet'r's Ltr. at 1, Dkt. No. 20.) As a result, he contends, there is a delay between when the time credits are earned and when they are reflected in his sentence calculation. The Court will briefly address this new argument.

Any "delay" between when times credits are earned and when they are reflected in the projected release date is a function of the applicable statute. Under § 3632(d)(4)(A), FSA time credits are earned after every 30 days of successful programming in EBRR or PA. No pro rata credit is authorized, nor are time credits earned upon completion of individual programs. Correspondingly, Program Statement 5410.01 provides that "FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period." (Finckler Ex. E at 11, Dkt. No. 15-5.) Mr. Laksonen is not entitled to habeas relief based on the timing of the BOP's application of FSA time credits.

Accordingly, based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Mr. Laksonen's Petition (Dkt. No. 1) be **DENIED**; and
2. Mr. Laksonen's Motion for Consideration (Dkt. No. 2) be **DENIED**.

Date:  April 12, 2023                                *s/ John F. Docherty*
                                                     JOHN F. DOCHERTY
                                                     United States Magistrate Judge

## NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).