UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard Laksonen,                                                      No. 22-cv-2868 (KMM/JFD)

        Petitioner,

v.                                                                                      **ORDER**

B. Eischen, Warden – FPC Duluth,

        Respondent.

On November 9, 2022, Richard Laksonen filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Pet., Doc. 1.] Mr. Laksonen alleged that the Bureau of Prisons ("BOP") improperly calculated the First Step Act ("FSA") time credits he has earned.[1] Essentially, Mr. Laksonen claimed that under the applicable statutory provisions and a BOP policy memorandum, he should have been accruing 15 days of FSA time credits for every 30-day period he participated in qualified programming, but the BOP only gave him credit for 10 days per 30-day period for the first six months of his sentence. On April 12, 2023, United States Magistrate Judge John Docherty issued a Report and Recommendation ("R&R") concluding that Mr. Laksonen's claim was inconsistent with the proper interpretation of 18 U.S.C. § 3632(d)(4)(A)(ii). [R&R at 4–8.] Mr. Laksonen objects to the R&R, but for the reasons that follow, those objections are overruled, the R&R is accepted, the petition is denied, and this matter is dismissed.

---

[1] Other issues Mr. Laksonen raised in his petition have since become moot. [Pet'r's Reply at 1–2, Doc. 18; R&R at 2 n.2, Doc. 23.]

1

*Standard of Review*

The Court reviews de novo any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). In the absence of objections, the Court reviews the R&R for clear error. *Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam)).

*The R&R*

The R&R properly found the following relevant facts. Mr. Laksonen is an inmate at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"), and is currently serving a 21-month sentence. His projected release date, according to the BOP's own calculations is May 20, 2023. Mr. Laksonen has been at FPC-Duluth since April 6, 2022. On April 27, 2022, the BOP conducted a program review and he received a "low" score on the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). His next assessment was on October 7, 2022, when he was deemed a "low" risk for recidivism. His PATTERN score again indicated he remained a "low" risk for recidivism on January 4, 2023.

Since arriving at FPC-Duluth on April 6, 2022, Mr. Laksonen has participated in Evidence-Based Recidivism Reduction ("EBRR") programming and Productive Activities ("PA"). On October 7, 2022, the BOP calculated his FSA time credits and found that between April 6th and October 3rd, he had earned 60 days of credits—10 days for each of six 30-day periods of his EBRR and PA participation. Between October 3, 2022 and February 11, 2023, he earned an additional 60 days—15 days of FSA time

credits for four more 30-day periods. Mr. Laksonen claimed that he should have received 15 days of FSA time credits for every 30 days of participation in EBRR and PA dating back to April 6, 2022, which would have resulted in a release date earlier than May 20, 2023.

Addressing this claim in the R&R, Judge Docherty disagreed. The R&R notes that under the FSA a prisoner earns FSA time credits at a rate of "10 days of time credits for every 30 days of successful participation in EBRRs or Pas. 18 U.S.C. § 3632(d)(4)(A)(i). But a prisoner can earn time credits at a greater rate:

> A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

*Id.* § 3632(d)(4)(A)(ii) (hereafter "the 15-Day Provision"). "Thus, under the language of the statute, to earn a total of 15 days of FSA time credits for 30 days of programming, an inmate must have his PATTERN score calculated as a low or minimum at two consecutive risk and needs assessments." [R&R at 5.]

Mr. Laksonen pointed to a Memorandum for Regional Correctional Program Administrators dated August 30, 2022, which provided that "[i]nmates will have either an initial PATTERN level of minimum or low risk or have dropped to a minimum or low risk level and maintained the new level for two consecutive assessment periods prior to being eligible for the higher earning rate of 15 days of being able to apply the FTCs earned." [R&R at 5.] He argued that this supported his position that an inmate is able "to

3

accrue 15 days of FSA time credits per 30-day period either (1) if the inmate had an initial PATTERN level of minimum or low risk (as Mr. Laksonen did) *or* (2) if the inmate dropped to a minimum or low risk level and maintained the new level for two consecutive assessment periods." [*Id.*]

Though the R&R agreed that the absence of punctuation in the BOP's memorandum made Mr. Laksonen's interpretation possible, the R&R found that interpretation would not be consistent with the language of the statute. [*Id.* at 6.] Judge Docherty read the 15-Day Provision to contemplate that an individual who initially receives a minimum or low risk level assessment would need to maintain that low-risk determination over two consecutive assessments before becoming eligible to receive the five additional days of FSA time credits for participation in EBRR and PA. [*Id.*] He also concluded that this interpretation was consistent with the BOP's own regulations. [*Id.* at 7 (citing 28 C.F.R. § 523.42(c)(2)).] Mr. Laksonen was initially determined to be low risk on April 27, 2022, and again on October 7, 2022. Because Mr. Laksonen began earning 15 days of FSA time credits per 30-day period of participation in EBRR and PA beginning on October 3, 2022, the R&R found that his habeas claim asserting that the BOP was failing to properly calculate his sentence was without merit. [*Id.*]

Finally, the R&R noted that on March 20, 2023, Mr. Laksonen argued that the BOP was applying his FSA time credits too late in the month following the month in which they were earned. [*Id.* at 8.] The R&R concluded that any delay "between when time credits are earned and when they are reflected in the projected release date is a function of the applicable statute," under which credits are only earned after 30 days of

successful EBRR or PA programming, and "[n]o pro rata credit is authorized, nor are time credits earned upon completion of individual programs." [*Id.*] The R&R further notes that BOP Program Statement 5410.01 provides that "FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period." [*Id.* (citing Finckler Ex. E at 11, Doc. 15-5).]

### *Petitioner's Objections*

Mr. Laksonen objects to the R&R's conclusion that he was not entitled to receive 15 days of FSA time credits for every 30-day period of programming dating back to his arrival at FPC-Duluth. First, Mr. Laksonen contends that the R&R failed to address "relevant intra-district case law"—*Eviglo v. Eischen*, No. 22-cv-1500 (WMW/DTS), Doc. 17 (D. Minn. Mar. 21, 2023)—in which the court reached a different conclusion on this same issue. [Objection at 1, Doc. 24.] In *Eviglo*, United States Magistrate Judge David T. Schultz recommended that the habeas petition be denied without prejudice because it was not yet ripe for decision. *Id.*, Doc. 17 at 3–4. In reaching that conclusion, the court determined that even if the petitioner had earned the maximum amount of FSA time credits since the date of his sentencing, the resulting credits would lead to a projected good time release date over a year in the future. *Id.* at 3. The *Eviglo* court reasoned that the petition was premature because FSA time credits are subject to change based on continued participation in eligible programs, risk classifications, and disciplinary actions, they are not applied until they equal the remainder of a term of

5

imprisonment. *Id.* Contrary to Mr. Laksonen's argument, *Eviglo* does not stand for the proposition that the proper interpretation of the 15-Day Provision allows a prisoner to begin earning the extra 5 days of FSA time credits immediately upon receiving an initial low-risk PATTERN score. The court merely applied the 15 days for the entire period to demonstrate why Mr. Eviglo's petition was premature even if he received everything he claimed to be entitled to receive.

Second, Mr. Laksonen contends that the R&R did not address "binding out of Circuit case law." [Objection at 1.] This objection is also without merit. This Court is bound by the decisions of the United States Supreme Court and the Eighth Circuit Court of Appeals. Out-of-circuit case law may be considered for its persuasive value, but it is not binding. Moreover, neither of the district court cases Mr. Laksonen cites concludes that the 15-Day Provision should be interpreted in the manner he prefers. *Brodie v. Pliler*, No. 22 Civ. 3821 LGS, 2022 WL 16751908 (S.D.N.Y. Nov. 7, 2022); *Stewart v. Snider*, No. 1:22-cv-0294-MJJ-JHE, 2022 WL 2032305 (N.D. Ala. May 10, 2022), *R&R adopted*, 2022 WL 2019965 (N.D. Ala. June 6, 2022). Neither *Brodie* nor *Stewart* addressed the proper interpretation of the 15-Day Provision and its application to a person, like Mr. Laksonen, who had a "low" recidivism risk on his initial PATTERN assessment and maintained it for his later assessments. Instead, both cases addressed how the BOP chose to manually calculate FSA time credits according to interim procedures prior to the adoption of the BOP's automated program, a manual approach that defaulted to using the maximum 15-days for the entire period. *Brodie*, 2022 WL 16751908, at *2; *Stewart*, 2022 WL 2032305, at *6.

Third, Mr. Laksonen argues that the R&R "ignored the plain language of the statute." He insists that the 15-Day Provision makes the mandatory command that a prisoner "*shall* earn an additional 5 days of time credits *every* 30 days of participation," and "the BOP cannot promulgate an arbitrary start point for the additional 5 days of earned FTC under the statute." [Objection at 2.] The Court finds no error in the R&R's interpretation of the 15-Day Provision. The language of the statute reflects an interest in providing greater incentive for ongoing participation in EBRR and PA programs for individuals who demonstrate, over time, that they remain unlikely to recidivate. Consistent with that purpose, the triggering event for earning "an additional 5 days" of FSA time credits for every month of programming is that the prisoner has first maintained a minimum or low risk of recidivating "*over 2 consecutive assessments*." 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added). This reading is further supported by the 15-Day Provision's focus on the fact that the individual "has not increased their risk of recidivism" through the course of those consecutive assessments. *Id.* At the point when a person is initially assessed as presenting minimum or low risk of recidivism, which is the when Mr. Laksonen argues the five additional days should begin being counted in his case, he has not maintained the minimum or low risk assessment over 2 consecutive assessments. Consequently, Mr. Laksonen's proposed interpretation of the 15-Day Provision is inconsistent with its language and its purpose, and his objection is overruled.

Fourth, Mr. Laksonen asserts that, contrary to the R&R's characterization of his March 2023 letter, he was not requesting pro-rata or partial credit. Rather, he states that the BOP's process for crediting earned FSA time credits occurs somewhat randomly, and

often toward the end of the following month, which results in prejudice to someone like Mr. Laksonen, who is in close proximity to his release date. Mr. Laksonen explains that he will earn FSA time credits for his participation in EBRR and PA during April 2023, and his current May 20, 2023 release date will then be May 5th, but because the BOP's auto-calculation will not update until late in the month of May, he could lose the chance to benefit from the 15 additional days he is likely to earn this month. But the government advises that, in fact, Mr. Laksonen's release date will be moved to earlier in May by later this month, in time for the change to benefit him. [Resp. to Objection at 3 n.2, Dkt. 26.] The Court is sympathetic to the potential problem Mr. Laksonen has identified. The BOP should address how it can ensure that Mr. Laksonen and other prisoners like him, do not end up spending additional time in prison as a result of a delay in the BOP's auto-calculation system updating their projected release dates to reflect more fully earned FSA time credits toward the end of a sentence. However, based on this record, the Court cannot conclude that the BOP's calculation of Mr. Laksonen's sentence is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3).

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**

1. Mr. Laksonen's Objections [Doc. 24] are **OVERRULED**.

2. The R&R [Doc. 23] is **ACCEPTED**.

3. The Petition [Doc. 1] is **DENIED**.

4. The Motion for Consideration [Doc. 2] is **DENIED**.

5. This matter is **DISMISSED WITH PREJUDICE**.

**Let Judgment be Entered Accordingly.**

Date: April 25, 2023

                                                 *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States District Judge